UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BARBARA CHRETIEN                         CIVIL ACTION NO. 6:11-cv-00057

VERSUS                                   JUDGE HAIK

MICHAEL J. ASTRUE,                       MAGISTRATE JUDGE HANNA
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded.

## BACKGROUND

On July 16, 2008, the claimant, Barbara Chretien, applied for Social Security

Disability Insurance Benefits and Supplemental Security Income benefits,[1] claiming

that she became disabled on March 28, 2008.  In a contemporaneous disability report,

she claimed that she is unable to work because she suffers with diabetes, high blood

pressure, heart disease, and rheumatoid arthritis.[2]  She also stated that she can no

---

[1]     Rec. Doc. 7-6 at 2; Rec. Doc. 7-6 at 10.

[2]     Rec. Doc. 7-7 at 7.

longer drive, has trouble sitting and standing, and has trouble lifting and carrying objects.[3]  A determination was made that she is not disabled.[4]  Ms. Chretien requested a hearing, which was held on September 15, 2009 before Administrative Law Judge ("ALJ") Steven C. Graalman.[5]

Ms. Chretien was born on February 12, 1963,[6] and currently is 48 years old. She has a high school education and attempted some vocational training.[7]  She last worked in March 2008 as a hot shot driver.[8]  She has also worked at several other jobs, including as a cook, as a pipe inspector, and as a presser for a dry cleaning service.[9]  She testified that she was forced to stop working as a driver because she became insulin dependent.[10]  She stated that it is hard for her to walk or sit for long periods of time; that she experiences a great deal of pain, that fluid builds up in her hands, her fingers become numb, and her hands shake so that it is difficult to hold

---

[3]     Rec. Doc. 7-7 at 7.

[4]     Rec. Doc. 7-4 at 2, 3.

[5]     The hearing transcript is found in the record at Rec. Doc. 7-3 at 36-54.

[6]     Rec. Doc. 7-6 at 2.

[7]     Rec. Doc. 7-3 at 40.

[8]     Rec. Doc. 7-3 at 40.

[9]     Rec. Doc. 7-3 at 42.

[10]     Rec. Doc. 7-3 at 42.

onto an object.[11]  At the time of the hearing in September 2009, she was seeing Dr. Wartelle Castille every month.[12]

The record contains Ms. Chretien's medical records from University Medical Center ("UMC"), covering the time period from October 3, 2007 through July 29, 2008;[13] her medical records from LSU University Medical Center ("UMC"), covering the time period from January 11, 2006 through June 23, 2009;[14] and her medical records from the St. Martin Parish Community Health Center, covering the time period from July 16, 2009 through March 18, 2010.[15]

Numerous records indicate that Ms. Chretien has a long history of uncontrolled Type II diabetes.  On March 25, 2008 and June 25, 2008, the records indicate that Ms. Chretien's Type II diabetes was uncontrolled.[16]  On July 15, 2008, Ms. Chretien was provided with diabetic foot care at UMC.  She had swelling and pain in both feet, and

---

[11]     Rec. Doc. 7-3 at 43; Rec. Doc. 7-3 at 48.

[12]     Rec. Doc. 7-3 at 45.

[13]     Rec. Doc. 7-8 at 2-19.

[14]     Rec. Doc. 7-8 at 36-70.

[15]     Rec. Doc. 7-8 at 71-141.

[16]     Rec. Doc. 7-8 at 8-9.

it was again noted that she suffers with uncontrolled diabetes.[17]  On September 24, 2008, she was again treated for her uncontrolled diabetes.[18]

On November 14, 2008, she presented at UMC for a follow-up visit for diabetes and high blood pressure.  Her complaints included knee, hip, and foot pain, as well as tingling and numbness in her toes and feet.  Both the history section of the record and the impression section indicate that she suffers with diabetic neuropathy.[19]

On February 11, 2009, Ms. Chretien was also diagnosed with mild to moderate diabetic retinopathy,[20] another complication of her uncontrolled diabetes.

The record indicates that, in July 2009, Ms. Chretien began treating with Dr. Wartelle Castille at the St. Martin Parish Community Health Center.  From December 2009 through March 2010, the record indicates that Ms. Chretien continued to treat at the center, although she no longer was seen by Dr. Castille.[21]

---

[17]     Rec. Doc. 7-8 at 8.

[18]     Rec. Doc. 7-8 at 43.

[19]     Rec. Doc. 7-8 at 40.

[20]     Rec. Doc. 7-8 at 39.

[21]     Ms. Chretien's counsel states that Dr. Castille left the center for private practice in the fall of 2009.  Rec. Doc. 9 at 3.

On July 16, 2009,[22] Ms. Chretien complained of pain, tightness, and tingling in both hands.  Dr. Castille's assessment/diagnosis included inflammatory myopathy, diabetes, and obesity.  He administered an injection of toradol, a painkiller.

On July 27, 2009,[23] Ms. Chretien presented with continued pain, numbness, and tingling in her hands and feet.  Dr. Castille's assessments/diagnoses included diabetes and obesity.

On August 3, 2009,[24] Ms. Chretien presented with no new complaints, and Dr. Castille's assessments/diagnoses included Type II diabetes with complication and morbid obesity.

Treatment notes from September and December 2009 carry forward the assessments/diagnoses of Type II diabetes with complication and obesity.[25]

In January 2010, Ms. Chretien presented at the center with complaints of arm and leg pain.  Her diagnoses again included Type II diabetes with complication.[26]

---

[22]     Rec. Doc. 7-8 at 78-80.

[23]     Rec. Doc. 7-8 at 75-77.

[24]     Rec. Doc. 7-8 at 122-126.

[25]     Rec. Doc. 7-8 at 110-120.

[26]     Rec. Doc. 7-8 at 102-108.

A treatment note from Ms. Chretien's March 3, 2010[27] visit to the center indicates that she was counseled regarding chronic pain caused by diabetic neuropathy.

The treatment notes for a follow-up appointment on March 18, 2010[28] include a therapeutic history for diabetic neuropathy.  Under neurological findings, the examiner noted decreased sensation to bilateral feet.  The diagnoses include morbid obesity, Type II diabetes with complication, and osteoarthritis.

On September 15, 2008, approximately a year before the hearing, Ms. Chretien was examined by Dr. Kenneth A. Ritter, Jr.[29] at the request of Disability Determination Services.  Among Dr. Ritter's impressions were that Ms.  Chretien has "adult onset diabetes mellitus under very poor control," well-controlled hypertension, and "significant obesity."  He submitted a medical assessment of ability to do work-related activities, in which he concluded that Ms. Chretien's sitting, standing, and walking are not affected by any impairments.  The only restrictions he placed on her were that she lift a maximum of twenty to thirty pounds occasionally and a maximum

---

[27]     Rec. Doc. 7-8 at 96-100.

[28]     Rec. Doc. 7-8 at 88-94.

[29]     Rec. Doc. 7-8 at 21-23 (Dr. Ritter's report).

of ten to twenty pounds frequently.   The reasons for those limitations are unexplained.

Approximately a year later and less than a month before the hearing, Dr. Castille, Ms. Chretien's treating physician, submitted an analysis of Ms. Chretien's diabetic condition.[30]   He expressly found that she demonstrates "[n]europathy demonstrated by significant and persistent disorganization of motor functions in two extremities resulting in sustained disturbance of gross and dexterous movements." He further noted that she exhibits joint pain, swelling, and tenderness.  He noted that she has arthritis in her hand and wrists.  He noted that protracted use of her hands results in numbness and pain while protracted walking or standing results in pain in her feet.  He concluded that she can stand or walk for two hours in an eight-hour day and sit for six hours in an eight-hour day.

An unfavorable decision was rendered by the ALJ on February 19, 2010.[31]  Ms. Chretien requested review by the Appeals Council,[32] but the Appeals Council denied her request.[33]  This appeal was filed on January 20, 2011.[34]

---

[30]      Rec. Doc. 7-8 at 34-35.

[31]      Rec. Doc. 7-3 at 25-33.

[32]      Rec. Doc. 7-3 at 8.

[33]      Rec. Doc. 7-3 at 2.

[34]      Rec. Doc. 1.

## ASSIGNMENT OF ERRORS

Ms. Chretien contends that the Commissioner's decision is not supported by substantial evidence for four reasons:  (1) the Commissioner failed to find at Step 2 that her diabetic neuropathy is severe; (2) the Commissioner failed to properly consider the effect of her obesity on her functional abilities; (3) the Commissioner failed to consider the combined effects of all of her impairments in evaluating her residual functional capacity; and (4) the Commissioner failed to properly consider and give appropriate weight to the opinions of her treating physician.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[35]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[36]  Substantial evidence is more than a mere scintilla and less than a preponderance.[37]  A finding of

---

[35]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[36]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[37]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[38]   Finding substantial evidence requires scrutiny of the entire record as a whole.[39]   In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[40]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[41]   Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[42]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[43]

---

[38]     *Boyd v. Apfel,* 239 F.3d at 704.

[39]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[40]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[41]     *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[42]     42 U.S.C. § 423(d)(1)(A).

[43]     20 C.F.R. § 404.1572(a)-(b).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found disabled.

3. An individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work.[44]

---

[44]    *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[45] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[46]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[47]

The claimant bears the burden of proof on the first four steps.[48]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[49]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[50]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[45]     20 C.F.R. § 404.1520(a)(4).

[46]     20 C.F.R. § 404.1545(a)(1).

[47]     20 C.F.R. § 404.1520(e).

[48]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[49]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[50]     *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[51]  If the Commissioner determines that the claimant is disabled or
not disabled at any step, the analysis ends.[52]

In this case, the Commissioner found, at step one, that Ms. Chretien has not
engaged in substantial gainful activity since March 28, 2008, the alleged onset date
of her disability.[53]  That finding is supported by evidence in the record.  At step two,
the ALJ found that Ms. Chretien has two severe impairments:   diabetes and
hypertension.[54]  This is also supported by evidence in the record.  However, the ALJ
did not evaluate whether Ms. Chretien's neuropathy is a severe impairment.  At step
three, the ALJ found that Ms. Chretien does not have an impairment or a combination
of impairments that meets or medically equals one of the listed impairments.[55]  The
ALJ did not explain the basis for this finding.  The ALJ then found that Ms. Chretien
has the residual functional capacity to perform light work except that she can do no
more than occasional handling or fingering and no repetitive fine manipulation.[56]  At

---

[51]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[52]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[53]     Rec. Doc. 7-3 at 27.

[54]     Rec. Doc. 7-3 at 27.

[55]     Rec. Doc. 7-3 at 28.

[56]     Rec. Doc. 7-3 at 28.

step four, the ALJ found that Ms. Chretien is unable to perform her past relevant work.[57]   At step five, the ALJ found that there are jobs, existing in significant numbers in the national economy, that Ms. Chretien can perform.[58]   Therefore, the ALJ found that Ms. Chretien is not disabled.  Ms. Chretien argues that the ALJ erred in four ways, which will be discussed below.

### (1)   THE COMMISSIONER ERRED IN FAILING TO DETERMINE WHETHER MS. CHRETIEN'S DIABETIC NEUROPATHY IS SEVERE.

It is clear from Ms. Chretien's medical records that she suffers with diabetic neuropathy.  As explained by the National Institute of Neurological Disorders and Stroke:

> Diabetic neuropathy is a peripheral nerve disorder caused by diabetes or poor blood sugar control.  The most common types of diabetic neuropathy result in problems with sensation in the feet.  It can develop slowly after many years of diabetes or may occur early in the disease.  The symptoms are numbness, pain, or tingling in the feet or lower legs.  The pain can be intense and require treatment to relieve the discomfort.  The loss of sensation in the feet may also increase the possibility that foot injuries will go unnoticed and develop into ulcers or lesions that become infected.   In  some  cases,  diabetic  neuropathy  can  be

---

[57]      Rec. Doc. 7-3 at 31.

[58]      Rec. Doc. 5-3 at 19.

associated with difficulty walking and some weakness in
the foot muscles.[59]

At the second step of the disability analysis, the ALJ specifically considered Ms.

Chretien's diabetes, hypertension, arthritis, and obesity.  He found that her arthritis

and obesity are not severe and found that her diabetes and hypertension are severe.[60]

The ALJ did not consider whether her neuropathy might also be a severe impairment.

In a disability analysis, the Commissioner must consider all potential

impairments.[61]  A physical or mental impairment is an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques.[62]  Therefore, at

an early stage of the sequential analysis, the ALJ must decide whether an alleged

impairment is an impairment at all within the specialized meaning of that term.  If not,

there is no error in failing thereafter to mention or analyze it further.[63]  An impairment

is not severe only if it is a slight abnormality that has such a minimal effect on the

---

[59]    http://www.ninds.nih.gov/disorders/diabetic/diabetic.htm (Feb. 10, 2012).

[60]    Rec. Doc. 7-3 at 27-28.

[61]    See generally 20 C.F.R. § 404.1523; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

[62]    42 U.S.C.A. § 423(d)(3).

[63]    *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004).

individual that it would not be expected to interfere with an individual's ability to work.[64]

In this case, Ms. Chretien's medical records contain a clear diagnosis of diabetic neuropathy along with her complaints of pain, swelling, numbness, and tingling that are consistent with that condition, and which were raised repeatedly in the medical records, in her application for benefits, at the hearing, and in her briefing. However, there is no evidence that the ALJ considered whether Ms. Chretien's neuropathy was a medically determinable impairment or whether it was severe. Therefore, the undersigned finds the ALJ committed legal error mandating reversal and remand of the Commissioner's decision.

The ALJ did not address Ms. Chretien's neuropathy as an individualized medically determinable impairment.  If he considered her neuropathy at all, he apparently considered it as a part of her diabetes.  "However, including neuropathy under the umbrella of . . . diabetes is akin to including a herniated disc with nerve root impingement under a generic term like 'lower back problems.'  Neuropathy is an impairment with typical functional limitations all its own, functional limitations not always included in diabetes. . . ."[65]  This is confirmed by the fact that the listing for

---

[64]     *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), interpreting 20 C.F.R. § 404.1520(c).

[65]     *Alexander v. Astrue*, No. 09-1702, 2011 WL 316308, *4 (W.D. La. Jan. 6, 2011).

endocrine disorders, including diabetes, explains that diabetic neuropathy is to be evaluated under Listing 11.00, which is the listing for neurological disorders.[66]  The undersigned finds that the ALJ erred at step two of the disability analysis by failing to determine whether Ms. Chretien's neuropathy is a severe impairment.  This matter should, therefore, be remanded for consideration of the severity of Ms. Chretien's neuropathy.

The undersigned further concludes that the ALJ erred at step three, compounding the error he made at step two.  At step three, the Commissioner found that Ms. Chretien has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ reached that conclusion without any discussion whatsoever of the criteria included in any listing or, more particularly, of the criteria set forth in Listing 9.00, the listing for endocrine disorders such as diabetes.  The ALJ also failed to explain how Ms. Chretien might or might not satisfy the criteria of any listing.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[67]

In *Audler v. Astrue*, the ALJ, at step three of the analysis:

---

[66]     20 CFR Pt. 404, Subpt. P, App. 1 at Listing 9.00(b)(5)(a)(iii).

[67]     *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).

> summarily concluded that "[t]he medical evidence indicates that the claimant has status post lumbar laminectomy, cervical disc herniation, headaches and chronic neck and back pain, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  The ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment.[68]

The Fifth Circuit concluded that "[s]uch a bare conclusion is beyond meaningful judicial review."[69]  The court then went on to explain that:

> By the explicit terms of the statute [42 U.S.C. § 405(b)(1)], the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step.  Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."[70]

---

[68]     *Audler v. Astrue*, 501 F.3d at 448.

[69]     *Audler v. Astrue,* 501 F.3d at 448, quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[70]     *Audler v. Astrue*, 501 F.3d at 448, quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

-17-

In Ms. Chretien's case, the ALJ did even less than did the ALJ in *Audler*.  He simply stated that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ."[71]  He did not explain what listings he considered or how he reached the conclusion that Ms. Chretien does not meet or equal them.

In accordance with the reasoning set forth in *Audler*, the undersigned is unable to determine whether the Commissioner's conclusion at step three is or is not based on substantial evidence.  Therefore, the undersigned recommends that this matter be remanded for a thorough analysis of whether Ms. Chretien has an impairment or combination of impairments that meets or medically equals a listed impairment.

**(2)   The Commissioner Erred in Failing to Give Appropriate Weight to the Opinions of Ms. Chretien's Treating Physician.**

The Commissioner found that Ms. Chretien retains the ability to perform light work with certain limitations.  To be capable of performing light work, however, Ms. Chretien must be able to stand or walk for six hours out of an eight-hour day.[72]  Although Dr. Wartelle Castille, Ms. Chretien's treating physician, opined that Ms.

---

[71]     Rec. Doc. 7-1 at 39.

[72]     SSR 83-10, at 6.

Chretien can stand or walk for only two hours out of an eight-hour day, the ALJ gave Dr. Castille's opinion "some weight"[73] but did not give it controlling weight and did not explain why he gave the opinion only "some weight" rather than controlling weight.  For those reasons, Ms. Chretien argues that the ALJ erred.  The undersigned agrees.

Although it is not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability.[74]  When supported by medical evidence, a treating physician's expert opinion as to the existence of a disability is binding unless it is contradicted by substantial evidence to the contrary.[75]  The law is also clear that "[t]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[76]  Furthermore, the appropriate inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ."[77]

---

[73]      Rec. Doc. 7-3 at 29.

[74]      *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

[75]      *Loza v. Apfel*, 219 F.3d at 393.

[76]      *Loza v. Apfel*, 219 F.3d at 393.

[77]      *Loza v. Apfel*, 219 F.3d at 393.

Although the ALJ has sole responsibility for determining the claimant's disability status,[78] the medical opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses, can be given little or no weight only if the ALJ shows good cause for doing so.[79] Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[80] In this case, the ALJ did not make such a showing. He merely noted that he was giving the treating physician's opinion "some weight." An ALJ may reject the medical opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views including: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.[81] In this case, the ALJ

---

[78]    *Newton v. Apfel*, 209 F.3d at 455.

[79]    *Thibodeaux v. Astrue* , 324 Fed. App'x 440, 443-444 (5th Cir. 2009).

[80]    *Thibodeaux v. Astrue*, 324 Fed. App'x at 443-444.

[81]    *Newton v. Apfel*, 209 F.3d at 456, citing the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

made no such evaluation.   Consequently, the undersigned finds that the ALJ improperly discounted Dr. Castille's opinions.

In his briefing, the Commissioner argued that Dr. Castille's report was not entitled to controlling weight because he had only seen Ms. Chretien on three occasions prior to preparing the report.[82]   This explanation is not provided in the ALJ's decision, however, and "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision. . . ."[83]   The proffered explanation also ignores the fact that Ms. Chretien continued to treat with Dr. Castille after he issued the report, and then continued to treat with the St. Martin Parish Community Health Center after Dr. Castille moved on, demonstrating that there was a continuing relationship with the doctor and the clinic while Ms. Chretien saw Dr. Ritter, the consulting physician, only on one occasion.

The Commissioner's reasoning is also flawed in light of the timing of two function reports that the ALJ considered.   Dr. Castille's report was issued in August 2009, just weeks prior to the hearing.   The ALJ put more stock in the report issued by Dr. Ritter, at the request of Disability Determinations Services, who examined Ms. Chretien on only one occasion and did so in September 2008, approximately a year

---

[82]      Rec. Doc. 11 at 6.

[83]      *Newton v. Apfel*, 209 F.3d at 455.

before the hearing was held.   This ignores the possibility that Ms. Chretien's condition might have deteriorated over the time period between the two reports.

The ALJ's reliance on Dr. Ritter's report rather than Dr. Castille's also ignores the fact that Dr. Castille's report is based on substantial medical evidence in the record.

In this case, Dr. Castille was Ms. Chretien's treating physician when he issued a functional report on August 24, 2009, supported by information in the record based upon his ongoing examination of Ms. Chretien.  The undersigned finds that the ALJ should have given Dr. Castille's report controlling weight or he should have explained why Dr. Castille's report was not entitled to controlling weight.  The ALJ did neither.  Instead, he disregarded the opinions of Ms. Chretien's treating physician without establishing that there was good cause to do so.   Accordingly, the undersigned finds that the ALJ failed to apply the proper legal standard when evaluating Ms. Chretien's disability status.   Therefore, this matter should be remanded for further consideration.

### (3)    THE CLAIMANT'S OTHER ALLEGED ERRORS

Ms. Chretien also claims that the Commissioner erred in failing to properly consider the effect of her obesity on her functional abilities and in failing to consider

the combined effects of all of her impairments in evaluating her residual functional capacity.  Having already determined that the Commissioner's decision was flawed in three significant ways, the undersigned pretermits discussion of the final two alleged errors.

CONCLUSION AND RECOMMENDATION

For the reasons explained above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and REMANDED for further consideration in accordance with the foregoing discussion.  In particular, the Commissioner should thoroughly analyze whether Ms. Chretien has any severe impairments, thoroughly analyze whether she has an impairment or combination of impairments that meets or medically equals a listed impairment, and give her treating physician's opinions controlling weight unless there is good cause shown.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 13th day of February 2012.


PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE